McKECHNEY et al. v. WEIR.*

(Circuit Court of Appeals, Seventh Circuit. October 7, 1902.)

No. 898.

1. FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION—EFFECT OF STIP-
ULATION.

An agreement and stipulation between the parties to a suit in a federal
court involving the settlement of a partnership, in which it had granted
a restraining order, and, pending a motion for a receiver, that the pro-
ceedings should be stayed until the happening of a certain event, and
until the parties agreed on the method of collecting and distributing the
firm assets, did not deprive the court of its exclusive jurisdiction over the
subject-matter or the parties, nor prevent it from exercising such jurisdic-
tion by the appointment of a receiver after the defendants had, in effect,
repudiated the agreement by consenting to the appointment of a receiver
by a state court on application of a third person.

2. RECEIVER FOR PARTNERSHIP—STANDING OF THIRD PERSONS TO OPPOSE AP-
POINTMENT.

One not a party to a suit to settle a partnership, but who joins in an
agreement between the parties looking to a settlement of the matters
in controversy out of court, and as a part of such agreement is to receive
a certain sum from the firm assets when distributed, takes such right
subject to the carrying out of the other provisions of the agreement, and
has no standing to oppose the appointment of a receiver in the suit where
he has himself taken action which renders a settlement as contemplated
by the agreement impossible.

Appeal from the Circuit Court of the United States for the North-
ern Division of the Northern District of Illinois.

July 28, 1900, appellee, a citizen of Ohio, filed in the court below his bill
against John McKechney and John McKechney, Jr., citizens of Illinois, for
an accounting, a temporary injunction, and the appointment of a receiver
of the partnership property of the late firm of Weir, McKechney & Co., com-
posed of complainant's testator and the defendants. July 30, 1900, the court
entered a temporary restraining order. August 29, 1900, the defendants an-
swered. The same day, on complainant's motion for a temporary injunction
and the appointment of a receiver, the court referred the cause to a master
"to take an accounting between the parties and report the same, together
with his conclusions thereon, with all convenient speed," continued the re-
straining order in force until the further order of the court, and post-
poned the decision of the question of appointing a receiver. The only re-
maining asset of the firm was a judgment for $500,000 against the city of
Chicago, pending on appeal in the supreme court of Illinois. September 8,
1900, the defendant John McKechney filed a cross-bill, to which his wife,
Caroline L. McKechney, was made a party defendant, but she was not served
with process nor did she appear. Between October, 1900, and February, 1901,
various creditors, by leave of court, filed intervening petitions, asking that
their claims be adjudicated and paid before any distribution should be made
to the partners.

The record stood thus when on May 14, 1901, these parties and others en-
tered into a written agreement with respect to various controversies between
them. Mrs. McKechney agreed to dismiss certain suits pending in Ohio and
to surrender certain stock in an Ohio corporation; and for this action on her
part Mr. Weir, executor, agreed, among other things, to assign her $75,000
of his testator's share in the assets of Weir, McKechney & Co. This part
of the contract and the provision relating to the disposition of the present
suit are in these words: "The affairs of Weir, McKechney & Co., a firm

* Rehearing denied November 15, 1902.

composed of John McKechney, John McKechney, Jr., and said Frederic C. Weir, deceased, shall be adjusted and settled by first paying out of the assets the debts of the firm and of the surviving partners incurred in connection with the affairs of the firm, including its debts to L. C. Weir individually upon three promissory notes, one for $5,000, dated March 17, 1899, and one for $2,500, dated March 22, 1899, and one for $2,000, dated April 15, 1899, and by then returning to each partner the amount to the credit of his capital account. Out of the share or interest of Frederic C. Weir under the partnership articles in the remainder of such assets, if any, there shall be first paid to Caroline L. McKechney the sum of seventy-five thousand ($75,000) dollars, which sum is hereby assigned, transferred, and set over to her out of such remainder of said share or interest by said Levi C. Weir, executor, and the residue of such share or interest to Levi O. Weir, executor. The shares or interests of John McKechney and John McKechney, Jr., under said partnership articles shall be paid to them respectively. The assets of the firm shall be collected and distributed in a manner to be hereafter agreed upon by John McKechney, John McKechney, Jr., and Levi C. Weir, executor. The capital accounts of John McKechney and Frederic C. Weir shall stand as shown by the books unless errors therein are agreed to by Judson Harmon and John S. Miller, who are hereby appointed arbitrators for that purpose, whose joint and concurrent action shall be conclusive in determining any claims for correction of said capital accounts by either of said partners. An examination of said capital accounts shall be conducted by said arbitrators promptly and with all convenient speed, and all the facts, data, and information in the knowledge of the parties hereto shall be promptly submitted to them. In case said arbitrators shall find that there are included in the credits to the capital account of either of said partners any amounts which were obtained upon loans for which the obligations of the firm were given and which are still outstanding, the partner receiving such credit (and in the case of F. C. Weir, deceased, his said executor) shall assume and pay the same, and hold said firm harmless therefrom, or such credit shall be charged off, as said arbitrators shall determine. The cross-bill of John McKechney filed in the suit of Levi C. Weir, executor, against John McKechney and John McKechney, Jr., in the circuit court of the United States for the Northern district of Illinois, Northern division, shall be dismissed, and the proceedings upon the bill shall be stayed until the supreme court of Illinois shall have rendered judgment in the case of Weir, McKechney & Company against the city of Chicago, therein pending, and until the method of collecting and distributing the assets shall be agreed upon, and a stipulation to that effect shall be filed in said suit. Upon the settlement and adjustment of the affairs of said partnership, the costs of said action shall be paid from the assets of said firm."

May 25, 1901, Mr. Weir, executor, and the Messrs. McKechney, by their solicitors, signed the following stipulation: "It is stipulated that the said cross-bill of John McKechney shall be dismissed, without cost, all costs having been paid. It is further stipulated by the parties that the proceedings upon the said original bill of complaint of Levi C. Weir, executor as aforesaid, shall be stayed until the supreme court of Illinois shall have rendered judgment in the case of Weir, McKechney & Company against the city of Chicago, therein pending, upon the appeal of said city of Chicago from the judgment of the appellate court for the First district of Illinois affirming the judgment of the circuit court of Cook county in the case of Weir, McKechney & Company vs. The City of Chicago, and until the method of collecting and distributing the assets shall be agreed upon."

February 5, 1902, Mrs. McKechney filed in the circuit court of Cook county, Ill., a bill against her husband and son and Mr. Weir, executor, asking the appointment of a receiver for the property of Weir, McKechney & Co. The only interest she had in the firm's affairs that was exhibited by the bill was based on the foregoing contract of May 14, 1901. Her husband and son immediately appeared and consented to the appointment of a receiver, and her husband was appointed. Mr. Weir, executor, had no notice of the proceeding, and, so far as the record shows, has never been served.

April 7, 1902, Mr. Weir, executor, by a supplemental bill filed herein, laid

this situation before the court below, and moved for the appointment of a receiver. From an order appointing a Mr. Garnett, this appeal is prosecuted. The supreme court of Illinois has not disposed of the firm's case against the city of Chicago. Mr. Weir, executor, and the Messrs. McKechney have not agreed upon the manner in which the assets of the firm shall be collected and distributed. As no question is made but that some court should appoint a receiver, the allegations of the various pleadings and affidavits in that regard are immaterial here.

John S. Miller and Noble B. Judah, for appellants.
Lawrence Maxwell, Jr., and Charles H. Aldrich, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge, having stated the case thus, delivered the opinion of the court.

Prior to May 14, 1901, the federal circuit court had full jurisdiction of the subject-matter of, and parties to, the original bill. An order had then been entered restraining the defendants from selling or in any way disposing of the assets of the firm. A motion for the appointment of a receiver was pending. That court, therefore, had absolute control of the whole matter, free from the interference of any other court. Farmers' Loan & Trust Co. v. Lake St. El. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667. And the sole question is whether the contract and stipulation of May, 1901, deprived that court of the rightful power to act as it did upon appellee's supplemental bill and motion. Counsel for appellants are entirely right in saying that a suit is under the control of the parties, and that a court has no jurisdiction to be upheld, from imagined considerations of dignity or other motive, against a binding stipulation, and the case is to be scanned exclusively from that point of view.

What was the situation of the Messrs. McKechney on May 14, 1901? They were defendants to the original bill,—under a restraining order. A motion was pending to have the assets of the firm collected and distributed by a receiver. The parties were willing to avoid that expense if possible. So they agreed,—to what? "The assets of the firm shall be collected and distributed in a manner to be hereafter agreed upon." And "proceedings upon the bill shall be stayed until the supreme court of Illinois shall have rendered judgment in the case of Weir, McKechney & Co. against the city of Chicago, therein pending, and until the method of collecting and distributing the assets shall be agreed upon." With respect to the control and disposition of the assets, a matter then pending in the court below, the parties agreed to agree; that is, they agreed to nothing. But they thereby expressed their desire and intention to endeavor to reach an adjustment later. So they entered into an armistice. They agreed to suspend hostilities until the supreme court of Illinois should dispose of their case and until they should unite upon a method of distributing the proceeds. In determining the scope of this time limit, it must not be forgotten that the evident purpose of the parties was to see if they could not reach a complete settlement. The only remaining asset was the judgment against Chicago. But that fact would not prevent the appointment of a receiver immediately. There might well be pressing

occasion for the appointment of a receiver long before a decision could be had. There might be urgent demands for money to use in that litigation or in defending the firm against claims of creditors, and the parties might be unable or unwilling to raise it. And a motion for the appointment of a receiver was pending when the agreement of May 14th was made. There would be no immediate need of a receiver, if the parties would proceed with their negotiations and take care of emergencies as they arose. The principal thing, therefore, was their agreement to strive in good faith to effect a settlement. The time limit of the stay was not until the supreme court of Illinois should act, but until the supreme court should act and until the parties should reach an agreement. The clause respecting action by the supreme court was coupled with another that evidenced the dominant purpose of the parties, and the whole clearly contemplated that the wait for the supreme court should be conditioned upon the parties proceeding honestly and successfully to a mutually satisfactory conclusion. And if they did not, and if emergencies arose, what was intended? The agreement to agree could not be specifically enforced. It neither dismissed the suit nor furnished a basis therefor. It did not even suspend the restraining order, for Mr. Weir only consented that the Messrs. McKechney might act with respect to the assets in such a manner as he might thereafter agree to. It only stayed the determination of the application for a receiver and the hearing on the merits until the parties found out whether they could close their remaining differences without the court's aid. If they could not, the armistice was at an end. If either refused or incapacitated himself to try, the stay was broken, and the other was at liberty to proceed in the court below as if no attempt at settlement had been made. Now, the Messrs. McKechney, by appearing in the state circuit court and consenting to the appointment of a receiver, abandoned the controlling object of the truce, repudiated their agreement to negotiate with Mr. Weir untrammeled, and placed, so far as they could, the manner of collecting and distributing the assets in the control of the state court. And this is true independently of the question whether they incited Mrs. McKechney to apply to the state court for the appointment of a receiver.

The court below was of the opinion, in which we concur, that the proceedings in the state court were collusive. On the basis that Mrs. McKechney allowed herself to be used as a cloak to mask the purposes of her husband and son, her appeal falls with theirs.

But, collusion aside, Mrs. McKechney has no standing. Mr. Weir did not give her an unconditional obligation to pay $75,000. He assigned her an interest in the subject-matter of a pending suit, with reference to the handling of which the very instrument that gave her her interest made certain provisions. She could not count on these provisions otherwise than as Mr. Weir made them. To have prevented him from taking up and pressing the motion for a receiver which was pending in the federal circuit court when she bought into the suit, it was incumbent upon her to show that he had bound himself not to do so, and that such agreement was in force. There was no direct engagement with her on the subject. She could not take the

benefits of Mr. Weir's stipulation with her husband and son without its burdens.

There is no basis for the claim that Mrs. McKechney, on account of her citizenship in Illinois, could not apply to the federal court for protection of her dependent interests and was compelled to resort to the state court. Ex parte Tyler, 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689.

The contention that Mr. Weir could avail himself of the facts exhibited in his supplemental bill only as a defense to the proceedings in the state court is without merit. The federal circuit court had the right to decide for itself whether its original jurisdiction had been lost.

The intervening creditors have been permitted to file briefs in support of their position that, after their petitions had been filed, the original parties could not dismiss the suit without their consent. In view of the conclusions already reached, it is needless to decide that question.

The order appealed from is affirmed.